Jill Bong
marszinmotion@yahoo.com
PO Box 321,
Days Creek, OR 97429
541-825-3541
Plaintiff, appearing Pro Se

IN THE UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

EUGENE DIVISION

JILL BONG,                                    Case No.: 6:23-cv-00417-MK

Plaintiff,

v.                                            **PLAINTIFF'S RESPONSE TO DAYS**
                                              **CREEK DEFENDANTS' MOTION TO**
KATE BROWN, et al.,                           **DISMISS PER Rules 8, 12(e) & 12(b)(6)**

   Defendants.


      Plaintiff responds to Defendants Steve Woods, Rex Fuller, Clint Thompson, John Boling,

Charlie Sawyer, Rebekah Sawyer, Valerie Anderson, and Holly Hill (collectively "Days Creek

Defendants Individually") Motion to Dismiss (Dkt 216).

      Plaintiff references and incorporates her previous arguments from her motion to strike (Dkt

228).

**MEMORANDUM**

## I. Plaintiff's SAC complies with Rule 8

Plaintiff incorporates her arguments in Dkt 228 that her SAC does not violate Rule 8 because Rule 8 only requires a "a short plain statement **of the claim** showing that the pleader is entitled to relief," (emphasis added). Rule 8 does not require <u>only</u> a short plain statement, nor does it require that the ***Complaint*** be short or plain.

Justices Stevens and Ginsburg in their dissent in *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 574–75, 127 S. Ct. 1955, 1976, 167 L. Ed. 2d 929 (2007) stated that conclusions are allowed under Rule 8,

> "See also *Cook, Statements of Fact in Pleading Under the Codes*, 21 Colum. L.Rev. 416, 417 (1921) (hereinafter *Cook*) ("[T]here is no logical distinction between statements which are grouped by the courts under the phrases 'statements of fact' and 'conclusions of law' "). Rule 8 was directly responsive to this difficulty. Its drafters intentionally avoided any reference to "facts" or "evidence" or "conclusions." See *5 C. Wright & A. Miller*, *Federal Practice and Procedure* § 1216, p. 207 (3d ed.2004) (hereinafter *Wright & Miller*) ("The substitution of 'claim showing that the pleader is entitled to relief' for the code formulation of the 'facts' constituting a 'cause of action' was intended to avoid the distinctions drawn under the codes among 'evidentiary facts,' 'ultimate facts,' and 'conclusions' ...").

Rule 8 also does not limit a Complaint's number of pages. In fact, in *Phillips v. Lithia Motors, Inc*., No. CIV. 03-3109-HO, 2006 WL 1113608, at *4 (D. Or. Apr. 27, 2006), this Court ruled that a 507 page Complaint did not violate Rule 8, even though the complaint was "abusive". However, given that there were 24 sets of plaintiffs, "a lengthy complaint is necessary even though plaintiffs pleadings are longer than necessary" *Id*.

Likewise, this Complaint involves 19 defendants and dozens of causes of action spanning over a period of years. The length of Plaintiff's complaint is not unreasonable, considering the fact that Plaintiff expects the Court to adjudicate issues that go beyond the pleading stage, such as qualified immunity and levels of scrutiny.

As in *Swierkiewicz v. Sorema N. A*., 534 U.S. 506, 514, 122 S. Ct. 992, 999, 152 L. Ed. 2d 1 (2002), Plaintiff's SAC clearly "easily satisfies the requirements of Rule 8(a) because it gives

respondent fair notice of the basis for petitioner's claims." This is evidenced by the fact that *all* the defendants' counsels have been able to formulate arguments in response to Plaintiff's claims for relief in her SAC.

## II. No basis for dismissal under FRCP 12(e)

Plaintiff incorporates her arguments in Dkt 228 that in their Rule 12(e) motion, Days Creek Defendants Individually failed to identify the details desired under Rule 12(e) and instead moved for dismissal claiming that because the SAC "is thus functionally a shotgun pleading" (Dkt 216 Pg 7). However,

> "[a] Rule 12(e) motion that does not identify the details desired from the more definite statement is neither "effective" nor "in compliance with Rule 12(e)." *Gillibeau v. City of Richmond*, 417 F.2d 426, 431 & n. 5 (9th Cir. 1969)." *Barnes v. Olive*, No. 2:15-CV-00520-HZ, 2015 WL 5813193, at *3 (D. Or. Sept. 30, 2015)

Therefore, there is no basis for such a dismissal under FRCP 12(e).

## III. No basis for dismissal under FRCP 12(b)(6)

## A.     Continued assertions that Douglas County School District 15 ("DC15") is a not a Defendant in this case are frivolous

In Dkt 216, Days Creek Defendants Individually repeatedly assert that DC15 is not a defendant (eg "The school district, of course, is not a defendant in this matter — plaintiff has chosen to sue only individual defendants." Dkt 216 Pg 18, 20). However, Plaintiff has named the Days Creek Defendants in both their individual *and* official capacities.

It is unclear where Days Creek Defendants Individually derive the conclusion that DC15 is not a defendant in this case. This Court in this case has already ruled that "[a]n individual or entity is a party to this lawsuit only if they have been named in the case caption and properly served." (Dkt 132). Both DC15 and Douglas Education Service District are named in the caption and have been properly served. The Court's actions in this proceeding has also made very clear from its rulings that it considers Defendant Oregon School Boards Association ("OSBA"), which has been

similarly captioned, to be a defendant and a party to this lawsuit. Therefore, DC15 and Douglas

Education Service District are defendants in this lawsuit.

The higher courts have been clear on this issue.

"Section 1983 claims against government officials in their official capacities are really suits against the governmental employer because the employer must pay any damages awarded." *Butler v. Elle*, 281 F.3d 1014, 1023 n. 8 (9th Cir.2002).

When both a municipal officer and a local government entity are named, and the officer is named only in an official capacity, **the court may dismiss the officer as a redundant defendant**. See *Busby v. City of Orlando*, 931 F.2d 764, 776 (11th Cir.1991). (emphasis added) *Ctr. for Bio-Ethical Reform, Inc. v. Los Angeles Cnty. Sheriff Dep't*, 533 F.3d 780, 799 (9th Cir. 2008)

In fact, this Court in another case noted in  that,

The Supreme Court in *Monell v. Dep't of Soc. Services of City of New York*, 436 U.S. 658, 722 n. 55 (1978), found that "**official-capacity suits generally represent only another way of pleading an action against an entity of which an officer is an agent**."

Thereafter, the Court in *Brandon v. Holt*, 469 U.S. 464, 471–72 (1985), stated "we have plainly implied that a judgment against a public servant 'in his official capacity' imposes liability on the entity that he represents."

Therefore, all District officials will be subject to any injunctive order issued by the Court, regardless of whether they are individually named. **Because plaintiffs have already named the School District as a defendant, plaintiffs' claims against the District's board members in their official capacity are redundant, for liability purposes.** [emphasis added] *Eagle Point Educ. Ass'n v. Jackson Cnty. Sch. Dist. No. 9*, No. 1:12-CV-00846-CL, 2013 WL 3348357, at *6 (D. Or. July 1, 2013)

Counsel Mersereau cannot claim that he is unaware of the Court's opinion in *Eagle Point Educ. Ass'n* because he served as defense counsel in that particular case. Therefore Counsel Mersereau's assertions that DC15 is not a defendant in this case, and that Plaintiff "has chosen to sue only individual defendants" (Dkt 216 Pg 13), are legal contentions unwarranted by existing law. Counsel Mersereau, **knowing** the ruling in *Eagle Point Educ. Ass'n,* has not offered any nonfrivolous argument for extending, modifying, or reversing existing law which clearly states that official capacity suits are suits against the entity; nor has Counsel Mersereau made any nonfrivolous arguments for establishing new law. FRCP 11(b)(2)

No. 6:23-cv-00417-MK        PLAINTIFF'S RESPONSE TO DAYS CREEK DEFENDANTS' MOTION TO DISMISS PER Rules 8, 12(e) & 12(b)(6)

Furthermore, Counsel Mersereau's implication that plaintiff has to join DC15 (Dkt 216 Pg 18) in order for it to be a defendant in this lawsuit, is clearly a redundant procedure, since Plaintiff has already named the Days Creek Defendants officially (and individually). Plaintiff and this Court must therefore come to the conclusion that Counsel Mersereau's assertions that Plaintiff has only sued the individual Days Creek Defendants, and his implication that Plaintiff has to move to join DC15 when DC15 is already a defendant, is presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation. FRCP 11(b)(1)

**B.    Law of case applies to Counts 8 (tortious interference), 9 (ORS 659A.030), 13 (§1983 Free Exercise), 19 (ADA), 22 ( §1983 Retaliation)**

Plaintiff incorporates her arguments in Dkt 228 (Page 8-9, 12). To the extent that Days Creek Defendants Individually have offered an alternative plausible explanation, *Starr v. Baca*, 652 F.3d 1202, 1216–17 (9th Cir. 2011) explained that,

> If there are two alternative explanations, one advanced by defendant and the other advanced by plaintiff, both of which are plausible, plaintiff's complaint survives a motion to dismiss under Rule 12(b)(6). Plaintiff's complaint may be dismissed only when defendant's plausible alternative explanation is so convincing that plaintiff's explanation is im plausible. The standard at this stage of the litigation is not that plaintiff's explanation must be true or even probable. The factual allegations of the complaint need only "plausibly suggest an entitlement to relief." *Id*. at 1951.

Therefore, under the law of case doctrine, this Court is precluded from reconsidering if Plaintiff has stated claim for Counts 8, 9, 13, 19 and 22.

**C.    Count 5 - §1983 Conspiracy against rights**

Here, Plaintiff has alleged that she lost her property interest in her employment when Kate Brown publicly Tweeted  that Brown was directing Defendant Oregon Health Authority ("OHA") to require K-12 employees to be vaccinated "by October 18" (SAC  ¶176). OHA promulgated OAR 333-1019-1030 ("Vax Rule") shortly after Brown's Tweet requiring all K-12 employees to be vaccinated by October 18 (SAC  ¶¶192-193). Defendants Steve Woods, Holly Hill, Bob Sconce and unknown legal counsel, all cited "the Governor's new rule and state mandate identified in OAR 333-019-1030" (SAC  ¶354) as the reason for Plaintiff's loss of her employment property interest

without due process. These are more than just conclusory allegations, and they are sufficiently

plausible to state a claim of conspiracy.

> See *Mendocino Env't Ctr. v. Mendocino County*, 192 F.3d 1283, 1302 (9th Cir. 1999) ("[D]irect evidence of improper motive or an agreement among the parties to violate a plaintiff's constitutional rights will only rarely be available. Instead, it will almost always be necessary to infer such agreements from circumstantial evidence or the existence of joint action."). As was the case in *Soo Park v. Thompson*, "[w]hen the entire factual context is considered," Plaintiffs have "nudged" their conspiracy claim "across the line from conceivable to plausible." 851 F.3d 910, 928 (9th Cir. 2017). *Emanuel Displaced Persons Ass'n 2 v. City of Portland*, 704 F. Supp. 3d 1088, 1106–07 (D. Or. 2023)

## D.    Count 9 - ORS 659A.030

Defendants Steve Woods and Holly Hill are liable under ORS 659A.030 as

aider-or-abetters. The Oregon Appellate Court has made it clear that the

> "aid-or-abet liability under ORS 659A.030 (1)(g) is not limited to employers and employees. Anyone qualifying as a "person" under ORS 659A.001(9) may be an aider or abettor of an unlawful employment practice in a way that subjects them to liability under ORS 659A.030 (1)(g)." *Hernandez v. Cath. Health Initiatives*, 311 Or. App. 70, 80–81, 490 P.3d 166, 172 (2021)

Quoting *Burley v. Clackamas County*, 298 Or. App 462, 467, 446 P.3d 564, rev. den., 365

Or. 721, 453 P.3d 543 (2019), the *Hernandez* Court further ruled that it is not bound by the United

States District Court for the District of Oregon's conflicting "interpretation of an Oregon statute."

*Id*. Federal courts, however, "are bound by the pronouncements of the state's highest court on

applicable state law." *Appling v. State Farm Mutual Auto. Ins. Co*., 340 F.3d 769, 778 (9th

Cir.2003). Therefore, Steve Woods and Holly Hill as individuals, are liable under ORS 659A.030.

ORS 30.265 only applies to tort claims. Employment discrimination claims under ORS

659A.030 are not torts. To any extent that ORS 30.265 applies, aiding and abetting in employer

discrimination can never be acts "within the scope of their employment or duties and eligible for

representation and indemnification under ORS 30.285". ORS 30.265(2)

To the extent that Plaintiff has neglected to list Steve Woods and Holly Hill individually as

defendants, and to the extent that Plaintiff has to name Douglas County School District 15 and

Douglas Education Service District rather than in the "official-capacity" format under this claim, Plaintiff seeks leave to amend to change and/or add the proper defendants.

**E.      Counts 8 & 24 - Tortious interference with contracts**

Plaintiff has pleaded intentional interference with her employment contract. The interference by HR Director, Defendant Hill lies not in Hill's "alleged refusal to "correct" plaintiff's contract" (Dkt 216 Pg 12), but rather, occurred when Hill changed the terms of the contract ***before*** presenting it to Plaintiff. In the contract, Hill changed Plaintiff's pay rate from $29.83/hr (as set by the Collective Bargaining Agreement) to $29.83/period (effectively $19.89/hour as one period was about 1.5 hours).

While "Hill's alleged refusal to "correct" plaintiff's contract [may] not [be] interference" (Dkt 216 Pg 12), refusing to correct Plaintiff's contract to the proper DC15 pay rate as set by the Collective Bargaining Agreement shows ***intentional*** interference with Plaintiff's prospective economic relationship with DC15. Plaintiff has pleaded that the salary schedule is established by the **School Board** in accordance with the Collective Bargaining Agreement (SAC ¶110).

Defendants Woods and Hill are not the School Board and were therefore third parties to her contract because neither Woods, as Superintendent; nor Hill, as Director of Human Resources, had the authority to change the pay rate of teachers. (SAC ¶¶101-113, ¶¶891-896)

Likewise, demanding "proof of vaccination" or exception was not part of Plaintiff's employment contract, which was "subject to the laws of the State of Oregon, the duly adopted rules of the district and State Board of Education" (SAC Ex.C). There were no laws or rules duly adopted by the district or the State Board of Education requiring such documents. To the extent that Days Creek Defendants Individually will argue that OAR 333-019-1030 was a law, it is not, because only the State Legislature can pass laws and an administrative rule promulgated by Defendant Rachael Banks in an *ultra vires* action, based on then-Governor Defendant Kate Brown's tweets and directives, is not; and can never be, a law.

Demanding "proof of vaccination" or placing burdens on Plaintiff's religious beliefs are not acts within the scopes of Defendant Woods and Hill's employment as Superintendent and HR Director respectively. Reducing Plaintiff's pay rate and terminating Plaintiff respectively without having the contractual or statutory authority to do so, and without prior School Board approval cannot be said to be motivated to serve the employer.

## F.    Count 7 - 42 USC §1981

Plaintiff cannot state §1981 claim unless he has, or would have, rights under existing, or proposed, contract that he wishes "to make and enforce"; § 1981 plaintiffs must identify injuries flowing from a racially motivated breach of their own contractual relationship, not of someone else's. *Domino's Pizza, Inc. v. McDonald*, 546 U.S. 470, 126 S. Ct. 1246, 163 L. Ed. 2d 1069 (2006).

In this case, Plaintiff had a proposed contractual relationship with Defendant Douglas County School District 15 ("DC15"). This contractual relationship was bound by the collective bargaining agreement which set Plaintiff's prospective pay rate at $29.83/hour.

Defendants HR Director Holly Hill and Superintendent Steve Woods did not have the authority to revise the terms of the collective bargaining agreement pay rate. Yet, Defendant Hill purposefully changed the pay rate to $29.83/period (effectively $19.89 per hour as one period was about 1.5 hours). On notifying both Defendants Woods and Hill of this discrepancy,  Defendant Woods and Hill persisted in offering (and paying) Plaintiff $24/hour - still less than $29.83/hr.

"Typically, we apply the familiar McDonnell Douglas burden shifting framework for Title VII and § 1981 claims. *Metoyer*, 504 F.3d at 930 (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973)). A plaintiff may alternatively proceed by simply producing "direct or circumstantial evidence demonstrating that a discriminatory reason more likely than not motivated the employer." *Id*. at 931." *Surrell v. California Water Serv. Co*., 518 F.3d 1097, 1105 (9th Cir. 2008)

Plaintiff has alleged that she is the only Chinese employee of Defendant DC15. Plaintiff has alleged that all the other White, or appearing to be White employees were paid according to the collective bargaining rate (SAC ¶¶97-118; ¶¶881-881). Therefore, the direct or circumstantial evidence demonstrates the employer was motivated to reduce Plaintiff's pay rate based on a discriminatory reason. To the extent that there is no right of action under 42 USC §1981 against

No. 6:23-cv-00417-MK        PLAINTIFF'S RESPONSE TO DAYS CREEK DEFENDANTS'
MOTION TO DISMISS PER Rules 8, 12(e) & 12(b)(6)

state actors, Plaintiff seeks leave to amend her Complaint to change the 42 USC §1981 action to a 42 USC §1983 action.

**G.    Counts 10, 18, 19 & 20 - Title VII & ADA**

The sole reason for Days Creek Defendants Individually's assertion that Plaintiff has failed to state claim for Counts 10, 18, 19 & 20 is that the statute of limitations has passed. This assertion is based on a right to sue letter which Counsel Mersereau included in his declaration (Dkt 217 Decl. Mersereau Ex. 2).

Despite Counsel Mersereau's assertions (Dkt 217 Decl. Mersereau) that he has personal knowledge of the matters surrounding Plaintiff's EEOC complaints, he does not, and cannot; as Mersereau only appeared in the matter after EEOC had issued its right to sue letters. Since Counsel Mersereau has no personal knowledge of the complaints which Plaintiff filed with the EEOC, Counsel Mersereau has erroneously used Plaintiff's EEOC Case# 551-2022-03037 (Dkt 217 Ex. 2) to assert that the statute of limitations has passed. However, EEOC Case #551-2022-03037 involves a GINA claim which Plaintiff filed with the EEOC but did not bring suit in this proceeding.

EEOC Case #551-2022-01064 applies to the Title VII and ADA causes of action in this proceeding. Plaintiff has included the corresponding right to sue letter in SAC Ex.I.  The right to sue letter from BOLI gave Plaintiff 90 days to file her case, beginning on Feb 2, 2023, making the deadline for this case to be filed May 3, 2023.The court's file will reflect that this case was first filed March 22, 2023. (Dkt #1). March 22, 2023 is before May 3, 2023. Therefore, Plaintiff has stated claim for Counts 10, 18, 19 and 20. Plaintiff incorporates Dkt 229 Decl. Bong in support of her arguments to this claim.

To the extent that Plaintiff has to name Douglas County School District 15 and Douglas Education Service District rather than in the "official-capacity" format under this claim, Plaintiff seeks leave to amend.

**H.      Count 13 - Free Exercise**

Law of case applies to this Count (Dkt 9). "A person asserting a free exercise claim must show that the government action in question substantially burdens the person's practice of her religion." *Jones v. Williams*, 791 F.3d 1023, 1031 (9th Cir. 2015).

> "A substantial burden places more than an inconvenience on religious exercise; it must have a tendency to coerce individuals into acting contrary to their religious beliefs or exert substantial pressure on an adherent to modify his behavior and to violate his beliefs." *Id.* at 1031-32 (internal quotation marks and punctuation omitted).

Here, Plaintiff has alleged that her minority beliefs prohibit her from participating, enforcing or otherwise associating with the so-called COVID-19 mitigation measures. Plaintiff believes that the COVID-19 measures are pushed by demonic entities out to harm mankind. Plaintiff believes that her participation or other form of association with the COVID policies, and her knowing that such measures are harmful to mankind, would condemn her to purgatory (SAC ¶¶512-547). See *City of Hialeah*, 508 U.S. at 531 ("[R]eligious beliefs need not be acceptable, logical, consistent, or comprehensible to others in order to merit First Amendment Protection." (internal quotations and citation omitted)).

Plaintiff thus faced the Hobbesian choice of complying with Defendants Woods and Hill's unwritten and fluid terms of Vax Rule compliance and violating her religious beliefs; or abiding by her religious beliefs and being terminated and losing her vocation. Plaintiff chose the latter. Thus, Plaintiff has demonstrated complying with the fluid requirements of Vax Rule burdened her exercise of religion.

> Under the First Amendment, a plaintiff makes out her case if she shows "that a government entity has burdened her sincere religious practice pursuant to a policy that is not 'neutral' or 'generally applicable.'" *Waln v. Dysart Sch. Dist.*,54 F.4th 1152, 1159 (9th Cir. 2022) (quoting *Kennedy v. Bremerton Sch. Dist.*,142 S.Ct. 2407, 2422 (2022)). General applicability requires, among other things, that the laws be enforced in an evenhanded manner. *Id.* (citations omitted).

> "A government policy will fail the general applicability requirement if it 'prohibits religious conduct while permitting secular conduct that undermines the government's asserted interests in a similar way,' or if it provides 'a mechanism for individualized exemptions.' Failing either

the neutrality or general applicability test is sufficient to trigger strict scrutiny." *Kennedy*,142 S.Ct. at 2422 (citations omitted).

Here, Vax Rule admitted that the so-called "vaccines" do not work towards their purported purpose. Vax Rule and Steve Woods officially permitted students to be "unvaccinated" thus undermining the asserted interest of required "vaccination" to "protect" students and to help "control" COVID-19 (SAC ¶¶734-740). Vax Rule and Steve Woods officially also provided "a mechanism for individualized exemptions" *Id*., as evidenced by Defendant Steve Woods approving ***all*** Vax Rule exception requests - all except Plaintiff's (SAC ¶759). Therefore, Plaintiff has stated a claim for free exercise.

## I.    Count 14 - Freedom to refrain from association

Plaintiff's Freedom of Association claim is two-fold - forced association and forced disclosure of her religious affiliation.

(i) The constitutional inquiry is not qualified by any analysis of governmental interests and does not turn on an individual's ability to establish disagreement with the particular views promulgated by the union. It is enough if the individual simply expresses unwillingness to be associated with the union's ideological activities. *Roberts v. U.S. Jaycees*, 468 U.S. 609, 638, 104 S. Ct. 3244, 3260, 82 L. Ed. 2d 462 (1984)

Likewise, Plaintiff has stated claim because it was enough for Plaintiff to simply express unwillingness to be associated with the Oregon Health Authority by way of not wanting to use its religious exception form. (SAC ¶¶276-278, ¶¶319-322, ¶352)

(ii) In *Americans for Prosperity Found. v. Bonta*, 141 S. Ct. 2373, 2382, 210 L. Ed. 2d 716 (2021), the Supreme Court held that the freedom of association may be violated where individuals are punished for their political affiliation, *see Elrod v. Burns*, 427 U.S. 347, 355, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976) (plurality opinion). Furthermore, as in *NAACP v. Alabama*, "it is immaterial" to the level of scrutiny "whether the beliefs sought to be advanced by association pertain to political, economic, **religious** or cultural matters." 357 U.S., at 460–461, 78 S.Ct. 1163. Regardless of the type of association, compelled disclosure requirements are reviewed under exacting scrutiny. *Id*. [emphasis added]

In this case, after Plaintiff was compelled to disclose her minority religious affiliation (SAC ¶¶233-234), Defendant Steve Woods quickly hired a Christian to replace her (SAC ¶¶283-287).

Therefore, Plaintiff has stated a claim for freedom to refrain from association.

**J.      Counts 16 & 17 - §1985(3) and §1986**

The Court dismissed Count 16 only against Defendant OSBA because Plaintiff notified the

Court that she did not intend to make a §1985 claim against OSBA. The Court then also dismissed

Count 17 §1986 claim against OSBA based on its ruling that §1986 depends on a predicate

violation of §1985. It is unclear how the Court's dismissal of Defendant OSBA for Counts 16 & 17

are in any way connected to Days Creek Defendants Individually's assertion that Plaintiff has

failed to state claim.

> To state a claim for conspiracy to discriminate under 42 U.S.C. § 1985(3), a plaintiff must allege the following four elements: (1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and (3) an act in furtherance of this conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States. *Carpenters v. Scott*, 463 U.S. 825, 828-29, 103 S.Ct. 3352, 77 L.Ed.2d 1049 (1983).

Plaintiff has alleged (1) Defendants Steve Woods, Holly Hill and Bob Sconce came

together and (2) singled Plaintiff out for religious inquisition because of her minority race (SAC

(SAC ¶¶295-300, ¶¶310-333, ¶888) (3) to force Plaintiff to not only associate with a labor

organization, but with the totalitarian ideologies of Defendants Kate Brown and Rachael Banks,

despite already being informed that Plaintiff had a religious opposition to association with the

Oregon Health Authority's Vax Rule edicts (SAC ¶¶295-300, ¶¶310-333). (4) When Plaintiff

refused to compromise her beliefs, Defendant Steve Woods terminated Plaintiff's property interest

in her year-long contractual employment (SAC ¶352, Ex. C). Therefore, Plaintiff has stated claim

under §1985(3).

> A stated cause of action against such defendants for violation of §1986 requires that defendant knew of conspiracy to interfere with civil rights and, having power to prevent or aid in preventing commission of same, neglects or refuses to do so. *Santiago v. City of Philadelphia,* E.D.Pa.1977, 435 F.Supp. 136.

Plaintiff has alleged that Defendant Steve Woods participated in the §1985(3) and therefore

knew about it. Woods had the power to prevent the commission of the conspiracy, by simply not

allowing the compelled October 14, 2021 meeting with Defendants Holly Hill and Bob Sconce to occur (SAC ¶¶1094-1095). Instead, Woods facilitated and participated in the §1985(3) conspiracy.

**K.      Count 22 - First amendment retaliation**

Law of case doctrine applies to Count 22, where this Court has already ruled that Plaintiff has stated claim (Dkt 9).

Days Creek Defendants Individually conflate the five *Eng* tests to ***prevail*** on a First Amendment Speech Retaliation claim (Dkt 216 Pg 22) as opposed to the elements required to ***survive*** a Rule 12(b)(6) motion at the pleading stage. Therefore the five *Eng* tests which they cite are irrelevant at this pleading stage.

> "Speech involves matters of public concern 'when it can "be fairly considered as relating to any matter of political, social, or other concern to the community," or when it "is a subject of legitimate news interest; that is, a subject of general interest and of value and concern to the public."'" *Lane v. Franks*, 573 U.S. 228, 241 (2014) (quoting *Snyder v. Phelps*, 562 U.S. 443, 453 (2011)).

Plaintiff informed her supervisors, co-workers, state officials and members of her community that demanding COVID-19 vaccination as a condition of employment was a violation of the Constitution; and that the COVID-19 vaccines had potentially serious negative side-effects such as myocarditis, which can be fatal (SAC ¶¶247-248, ¶¶252-253). Plaintiff was hired to tutor Math, not to analyze the safety of medical treatments, nor to assess the legality of her employer's health and safety policies. Therefore, Plaintiff's speech can fairly be treated as outside the ordinary scope of her duties and instead merely related to her duties. *See Lane*, 573 U.S. at 240. Plaintiff was thus engaging in a constitutionally protected activity.

A successful First Amendment Retaliation claim must allege that the

> "(1) [Plaintiffs] engaged in constitutionally protected activity;
>  (2) the defendant's actions would 'chill a person of ordinary firmness' from continuing to engage in the protected activity; and
> (3) the protected activity was a substantial motivating factor in the defendant's conduct—i.e., that there was a nexus between the defendant's actions and an intent to chill speech." *Ariz. Students' Ass'n v. Ariz. Bd. of Regents*, 824 F.3d 858, 867 (9th Cir. 2016) ("*Arizona Students*") (citing *O'Brien v. Welty*, 818 F.3d 920, 933–34 (9th Cir. 2016)).

Plaintiff has alleged that she was (1) engaged in a constitutionally protected activity (see above); (2 & 3) School administers Steve Woods and Cathy Knapp told Plaintiff to stop talking about Vax Rule and the "vaccines", with Knapp adding that she did not want Plaintiff to get into trouble to speaking out; and Steve Woods terminated Plaintiff less than 2 months after Woods told Plaintiff to stop speaking out (SAC ¶245, ¶¶253-258).

> "At the pleading stage, the complaint must simply allege plausible circumstances connecting the defendant's retaliatory intent to the suppressive conduct[,] and motive may be shown with direct or circumstantial evidence." *Koala v. Khosla*, 931 F.3d 887, 905 (9th Cir. 2019) (internal quotations omitted). There is no requirement for a showing of actual suppression of protected speech, just that the defendant's intentional hinderance of plaintiff's First Amendment activity resulted in some injury. *Arizona Students*, 824 F.3d at 867.

In *Keyser v. Sacramento City Unified School District*, 265 F.3d 741 (9th Cir.2001) offers three ways in which a plaintiff can show that retaliation was a substantial or motivating factor behind a defendant's adverse employment actions:

> (i) First, a plaintiff can introduce evidence regarding the " 'proximity in time between the protected action and the allegedly retaliatory employment decision,' " from which a " 'jury logically could infer[that the plaintiff] was terminated in retaliation for his speech.' " *Id*. at 751

> "Depending on the circumstances, three to eight months is easily within a time range that can support an inference of retaliation." *Coszalter*, 320 F.3d at 977.

Here, Plaintiff has offered evidence that the time between Plaintiff's protected speech and her termination was less than two months.

> (ii) Second, a plaintiff can introduce evidence that "his employer expressed opposition to his speech, either to him or to others." *Keyser*

Plaintif has alleged that administrators Steve Woods and Cathy Knapp made such expressions in opposition to Plaintiff's speech (SAC ¶245, ¶¶253-258).

> (iii) Third, the plaintiff can introduce evidence that "his employer's proffered explanations for the adverse employment action were false and pre-textual." *Keyser* at 752

Plaintiff's employer's hiring of, and assigning of her replacement to shadow her ***before*** Plaintiff submitted her previously agreed-upon religious exemption request and ***before*** the employer's so-called "pre-termination" hearing (SAC ¶282-283, ¶¶290-294, Ex. E) shows that the

No. 6:23-cv-00417-MK        PLAINTIFF'S RESPONSE TO DAYS CREEK DEFENDANTS'
MOTION TO DISMISS PER Rules 8, 12(e) & 12(b)(6)

explanation for terminating Plaintiff because Plaintiff had not complied with Vax Rule, was false

and pre-textual. Therefore, Plaintiff has stated claim for First Amendment Retaliation.

**L.      Counts 23 & 37 - Breach of Contract & Wrongful termination**

To the extent that Plaintiff has to name Douglas County School District 15, the School board

members; or the Chairperson who signed the contract - Defendant Rex Fuller, rather than in the

"official-capacity" format under these claims, Plaintiff seeks leave to amend.

**M.      Counts 25-34 - Breach of fiduciary duty**

*Georgetown Realty, Inc. v. Home Ins. Co*., 313 Or. 97, 102, 831 P.2d 7, 9 (1992) stated that

in a breach of fiduciary duty action, "the gist of the action is the negligence of the defendants in the

performance of a duty which they owed to the plaintiff by reason of their employment." 37 Or. at

384, 61 P. 631.

The School Board had a contractual fiduciary duty to provide Plaintiff with pre-termination

due process as laid out in its own duly adopted school board policies GCPD-AR[1] and GCPD[2] - it

did not. Contractually, the School Board had to pay Plaintiff "all wages [in accordance with the

Collective Bargaining Agreement which had been] earned and unpaid at the time of discharge or

termination shall be payable no later than the end of the first business day after discharge or

termination" - it did not pay Plaintiff her full pay of $29.83/hr as required by the Collective

Bargaining Agreement for the third quarter of 2021 in accordance with policy GCPD-AR[3].

Superintendent Steve Woods officially, had a contractual fiduciary duty to not use his

publicly-funded position to promote or assist in union organizing upon Plaintiff. ORS 243.670

As *Starr v. Baca*, 652 F.3d 1202, 1216–17 (9th Cir. 2011) stated,

[In a 12(b)(6) motion,] Plaintiff's complaint may be dismissed only when defendant's plausible
alternative explanation is so convincing that plaintiff's explanation is im plausible. The standard
at this stage of the litigation is not that plaintiff's explanation must be true or even probable. The
factual allegations of the complaint need only "plausibly suggest an entitlement to relief." *Id*. at
1951.

---

[1] https://policy.osba.org/douglcty/G/GCPD%20R%20D1.PDF
[2] https://policy.osba.org/douglcty/G/GCPD%20D1.PDF
[3] https://policy.osba.org/douglcty/G/GCPD%20R%20D1.PDF

No. 6:23-cv-00417-MK        PLAINTIFF'S RESPONSE TO DAYS CREEK DEFENDANTS'
MOTION TO DISMISS PER Rules 8, 12(e) & 12(b)(6)

Days Creek Defendants Individually's alternative explanation is not "so convincing". *Id*.

To the extent that Plaintiff has to name Douglas County School District 15, the School board members; or the Chairperson who signed the contract - Defendant Rex Fuller, rather than in the "official-capacity" format under these claims, Plaintiff seeks leave to amend.

**N.      Count 35 - Pre-termination due process**

In *Vanelli v. Reynolds Sch. Dist. No. 7*, 667 F.2d 773, 777 (9th Cir. 1982), the Court ruled that,

> "The fourteenth amendment's guarantee of procedural due process applies when a constitutionally protected liberty or property interest is at stake. *Board of Regents v. Roth*, 408 U.S. 564, 569, 92 S.Ct. 2701, 2705, 33 L.Ed.2d 548 (1972). An interest in property arises only when there is a legitimate claim of entitlement, rather than an abstract need or desire for the particular benefit. *Id*. at 577, 92 S.Ct. at 2709. **It is well established that an employee dismissed during the term of a one-year contract and in breach of its provisions has a legitimate claim of entitlement and a property interest in continued employment**" (emphasis added)

Plaintiff had a one-year contract (SAC Ex.C) and Defendant Steve Woods officially was in breach of the contract. The contract expressly stated that it was bound by State law and the rules duly adopted by the School Board. Steve Woods officially did not abide by the pre-termination procedures as required by Policies GCPD-AR[4] and GCPD[5]. Steve Woods officially was the Superintendent, not the school district board. Steve Woods officially did not abide by ORS 342.835, which only authorizes ***only* a school district board** to discharge Plaintiff, who was a probationary teacher.

"Process" in due process means "notice and opportunity for hearing appropriate to the nature of the case." *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542 (1985). While the series of emails dated Oct 4, 2021 (SAC Ex.D) **may** have ***originally*** provided notice to Plaintiff that her employment was at risk due to alleged non-compliance with OAR 333-019-1030, the October 5, 2021 meeting with Woods and Hill, where Woods and Hill agreed to reasonably accommodate

---

[4] https://policy.osba.org/douglcty/G/GCPD%20R%20D1.PDF
[5] https://policy.osba.org/douglcty/G/GCPD%20D1.PDF

Plaintiff's religious request (SAC ¶¶275-279), negates any notice Plaintiff may have received prior to October 5, 2021.

*Matthews v. Harney Cnty., Or., Sch. Dist. No. 4*, 819 F.2d 889, 892 (9th Cir.1987) ("On the issue of notice, we read *Loudermill* to require, in advance of any pre-termination hearing (1) notice to the employee as to the pendency or contemplation of a dismissal action, **and** (2) notice as to the charges and evidence which give rise to that concern.")

The October 5, 2021 meeting negated the October 4, 2021 emails; **and** because no notice of the charges and evidence was provided to Plaintiff prior to the alleged Oct 14, 2021 "pre-termination hearing", Plaintiff received no due process.

> "Due process of law [is not present] where the [employer] has gone through the mechanics of providing a hearing, but the hearing is totally devoid of a meaningful opportunity to be heard." *Matthews v. Harney County Sch. Dist. No. 4*, 819 F.2d 889, 893–94 (9th Cir.1987); see, e.g., *Ross v. City of Memphi*s, 394 F.Supp.2d 1024, 1038 (W.D.Tenn.2005) ("A 'sham' proceeding in which the outcome of the hearing is predetermined does not meet the requirements of a pre-termination hearing and does not afford due process."). *Holder v. Cent. Oregon Cmty. Coll.*, No. 6:14-CV-01704-AA, 2016 WL 1725299, at *4 (D. Or. Apr. 29, 2016), judgment entered, No. 6:14-CV-01704-AA, 2016 WL 1725301 (D. Or. Apr. 29, 2016)

A so-called "pre-termination hearing" is not meaningful if Plaintiff was not even aware that she was participating in such a hearing. In this case, Plaintiff was told that the meeting was to ensure that the rights of union members would be preserved.

Even if the October 14, 2021 meeting with Superintendent Steve Woods, HR Director Holly Hill and Union Rep. Bob Sconce was, as Steve Woods fashioned, a "pre-termination hearing" (SAC Ex.E), Woods officially's hiring of Plaintiff's replacement and her replacement being already assigned to shadow Plaintiff *before* Plaintiff had submitted her agreed upon religious exemption request and *before* the supposed "pre-termination hearing" is evidence that the so-called "hearing" was predetermined - Woods officially had already planned to terminate Plaintiff and replace Plaintiff with the Christian hire (SAC ¶¶283-287).

Plaintiff has alleged that the School Board members ratified Woods' actions against Plaintiff (SAC ¶¶377-383). Plaintiff has thus stated a claim.

No. 6:23-cv-00417-MK    PLAINTIFF'S RESPONSE TO DAYS CREEK DEFENDANTS'
MOTION TO DISMISS PER Rules 8, 12(e) & 12(b)(6)

**O.    Count 39 - RICO**

To state a valid RICO claim, a plaintiff must allege: "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Sedima, S.P.R.L. v. Imrex Co*., 473 U.S. 479, 496, 105 S. Ct. 3275 (1985).

In addition, the plaintiff must allege that [(5)] "the defendant caused injury to plaintiff's business or property," an element which requires proof that the plaintiff's injury was proximately caused by the prohibited conduct and a concrete financial loss. *Chaset v. Fleer/Skybox Int'l, LP*, 300 F.3d 1083, 1086 (9th Cir. 2002); (6) To demonstrate injury for RICO purposes, plaintiffs must show proof of concrete financial loss, and not mere injury to a valuable intangible property interest. *Id*., 1086–87

(i) Racketeering activity for purposes of a RICO claim is any indictable act under 18 U.S.C. §1961(1), and includes but is not limited to extortion and involuntary servitude.

Plaintiff has alleged extortion and involuntary servitude in her Complaint (SAC ¶¶1254-1259; ¶¶1272-1277).

(ii) For the "conduct" element of a § 1962(c) RICO charge: a plaintiff must allege that the defendant "participated in the operation or management of the enterprise itself," and that the defendant played "some part in directing the enterprise's affairs." *Reves v. Ernst & Young* (1993) 507 U.S. at 179, 184, 113 S.Ct. 1163.

Plaintiff has alleged that Steve Woods participated in Kate Brown and Rachael Banks' operation of involuntary services enterprise (SAC ¶83,¶¶86-89; ¶¶125-130; ¶140, ¶142; ¶¶875-878); and that Steve Woods and Holly Hill participated in the operation of Kate Brown and Rachael Banks' extortion enterprise.

(iii) An "enterprise must have a "structure" that, under RICO's terms, has at least three features: [1] a purpose, [2] relationships among the associates, and [3] longevity sufficient to permit the associates to pursue the enterprise's purpose." *Boyle v. United States*, 556 U.S. 938, 129 S. Ct. 2237, 2240, 173 L. Ed. 2d 1265 (2009)

Here, Brown and Banks' actions qualify as an "enterprise" under RICO in that they (1) used OAR 333-019-1030 ("Vax Rule") without any legislative authority (SAC ¶¶618-656) to impose their "purpose" on K-12 school employees by demanding K-12 employees deliver valuable personal property (highly detailed and personally identifiable medical information) to their respective employers; (2) there was a formal or informal relationship between Brown,

No. 6:23-cv-00417-MK        PLAINTIFF'S RESPONSE TO DAYS CREEK DEFENDANTS'
MOTION TO DISMISS PER Rules 8, 12(e) & 12(b)(6)

Banks, K-12 school officials and OSBA to implement the purposes of Vax Rule (SAC Ex. E; also see *supra* Pg 6, Count 5); and (3) Kate Brown's Vax Rule enterprise ran from August 19, 2021 (FAC ¶176) - June 30, 2023 so the time frame was long enough to permit the associates to pursue the enterprise's purpose.

Similarly, for involuntary servitude enterprise (1) Brown and Banks used OAR 33-019-1015 ("Mask Rule") also without legislative authority, to impose their "purpose" on K-12 school employees by demanding K-12 employees perform unpaid public health mitigation services under threats of sanctions or job or licensure loss (SAC ¶¶125-130, ¶140); (2) there was a formal or informal relationship between Brown, Banks and K-12 school officials to implement the purposes of Mask Rule (SAC ¶83, ¶¶85-89); and (3) Kate Brown's Max Rule enterprise began around July 2021 (SAC ¶125) and remains active as of the time of filing this response in Aug 2024, so the time frame was long enough to permit the associates to pursue the enterprise's purpose.

> (iv) A "pattern of racketeering activity," states that such a pattern "requires at least two acts of racketeering activity." Sedima, S.P.R.L. v. Imrex Co., 473 U.S. 479, 527, 105 S. Ct. 3275, 3289, 87 L. Ed. 2d 346 (1985).

Plaintiff has alleged that all of DC15's instructional staff were required to perform public health mitigation services (SAC ¶83, ¶86); and that teachers of other school districts were also victims of Brown and Banks' extortion enterprise (SAC ¶¶1267-1270). Plaintiff has therefore stated the claim.

**P.    Count 41 -Substantive due process (right to refuse medical treatment)**

Days Creek Defendants Individually fail to articulate how the Count 41 is analogous to the *Johnson v. Brown.* In *Johnson,* the Court ruled that the plaintiffs failed to show the likeliness of success on the merits of their claim for a temporary restraining order that, "the Vaccine Orders violate Plaintiffs' due process rights because the Vaccine Orders force Plaintiffs to take "experimental" vaccines without Plaintiffs' consent." *Johnson v. Brown*, 567 F. Supp. 3d 1230,

1252 (D. Or. 2021). It does not appear that the Plaintiff in *Johnson* alleged that the so-called "vaccines" do not work in preventing the transmission of COVID, which triggers the fundamental right to refuse medical treatment. *Health Freedom Defense Fund, Inc. v. Carvalho*, 104 F.4th 715 (9th Cir. 2024)

> To state a substantive due process claim, a plaintiff must allege (1) a valid liberty or property interest, (2) which the government infringed in an arbitrary or irrational manner. *Vill. of Euclid, Ohio v. Ambler Realty Co.*, 272 U.S. 365, 395, 47 S.Ct. 114, 71 L.Ed. 303 (1926).

> Certain rights or liberties have been deemed "fundamental," so they receive greater protection. *Washington v. Glucksberg*, 521 U.S. 702, 720-21, 117 S.Ct. 2258, 138 L.Ed.2d 772 (1997).

In this case, Plaintiff has alleged that the so-called "vaccines" do not work towards their purported purposes of preventing the transmission or contraction of COVID-19 (SAC ¶¶1344-1347). *Health Freedom Def. Fund, Inc. v. Carvalho*, 104 F.4th 715, 725 (9th Cir. 2024) stated that the Supreme Court's case law clarified "that compulsory treatment for the health benefit of the person treated—as opposed to compulsory treatment for the health benefit of others—implicates the fundamental right to refuse medical treatment." The fundamental right to refuse medical treatment has been clearly established in *Glucksberg*, 521 U.S. at 725, 117 S.Ct. 2258; *Cruzan v. Dir., Missouri Dep't of Health*, 497 U.S. 261, 278, 110 S.Ct. 2841, 111 L.Ed.2d 224 (1990); *Coons v. Lew*, 762 F.3d 891, 899 (9th Cir. 2014).

Plaintiff has alleged that Defendants Steve Woods and Holly Hill enforced Vax Rule irrationally or arbitrarily - rubber-stamping Vax Rule compliance approvals for everyone - except for Plaintiff, based solely on Plaintiff's minority religious objections (SAC ¶974). From a health-risk standpoint, the reasons for approved exemptions, and being supposedly "vaccinated" were irrelevant to controlling the contraction or transmission of COVID-19 - neither approving exceptions or the so-called "vaccines" worked towards their purported purpose (SAC ¶¶143, 729,).

It is shocking to the conscience that as a condition of employment, Woods and Hill - public school officials, who are not medical professionals, would demand invasive medical treatment

which Vax Rule admitted does not work towards their purported purpose. Therefore, Plaintiff has stated the claim.

## CONCLUSION

For the reasons stated, Plaintiff respectfully moves the Court to deny Days Creek Defendants Individually (Dkt 216) motion to dismiss. Should the Court rule that Plaintiff had misnamed the defendants in the "official-capacity" format instead of properly naming the entities in the non-§1983 claims, Plaintiff seeks leave to amend. Plaintiff also seeks leave to amend her §1981 to §1983.

Respectfully submitted on this day of August 25, 2024.

By: _s/Jill Bong_
JILL BONG, Plaintiff